UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re:                                                                    **Chapter 7**
                                                                          **Case No. 17-11080**
       MARK D. ARAGONA,

                        Debtor.
-------------------------------------------------------------------

## MOTION TO REOPEN DEBTOR'S CHAPTER 7 BANKRUPTCY CASE TO ALLOW THE FILING OF A MOTION TO HOLD PARTIES IN CONTEMPT FOR VIOLATION OF DEBTOR'S DISCHARGE INJUNCTION

Debtor Mark D. Aragona, through his attorneys Lemery Greisler LLC, as and for his Motion to Reopen Debtor's Chapter 7 Bankruptcy Case pursuant to 11 U.S.C. § 350 (b), states as follows:

## BACKGROUND

1.      Mark D. Aragona ("Debtor") filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 7, 2017 (the "Petition"). *See*, Docket No. 1.

2.      On September 11, 2017, the Chapter 7 Trustee Michael J. O'Connor, Esq. filed his report of no distribution reporting that he had not received any property nor been paid any money on account of the estate and that after a diligent inquiry there was no property (no assets) available for distribution.

3.      By Order dated September 18, 2017, the Debtor received a discharge under 11 U.S.C. §727 (the "Discharge"). *See*, Docket No. 17.

4.      Wizard Works Product Development Company, Inc. ("WWPDC") is a New York Corporation that designed, built and constructed custom park attractions for its clients.

5.      Debtor is the President/Owner of WWPDC.

6.      To build and construct the waterpark attractions, WWPDC designed and engineered

1

custom waterslide molds (the "molds") which were used to make the waterslide parts. Once the waterslide parts were made, they could be assembled into waterslides of many configurations.

7. WWPDC retained Fiberglass World to make the waterslide parts. WWPDC would provide the molds to Fiberglass World and the later would use them to shape the waterslide parts.

8. Prior to the commencement of Debtor's bankruptcy, WWPDC entered into several contracts to develop multiple waterpark attractions. The contracts were the following:

   a. Water Park Interactive Equipment Purchase and Services Contract by and between WWPDC and Lazy River Resort, LLC dated October 21, 2014 (Exhibit "A");

   b. Water Park Interactive Equipment Purchase and Services Contract by and between WWPDC and Hill Country Resorts, LLC dated February 6, 2015 (Exhibit "B");

   c. Water Park Interactive Equipment Purchase and Services Contract by and between WWPDC and Stockton Delta Resort, LLC July 20, 2016 (Exhibit "C"). The debtor executed this contract in his capacity as President of WWPDC and in a personal capacity as guarantor of the obligations and performance of WWPDC.

   d. Water Park Interactive Equipment Purchase and Services Contract by and between WWPDC and Kerville Camp – Resort, LLC dated July 20, 2016 (Exhibit "D"). The debtor executed this contract in his capacity as President of WWPDC and in a personal capacity as guarantor of the obligations and performance of WWPDC.

9. On or about January of 2016, WWPDC decided to use another contractor named Virtual Polymer Compounds, LLC ("VPC") to make the fiberglass waterslide parts.

10. Upon information and belief, VPC is owned by Corey Hogan, Esq. ("Attorney Hogan"), an attorney of the law firm of HoganWillig, PLLC.

2

https://www.vpcfiberglass.com/contact_us.shtml. The HoganWillig firm is representing VPC and the plaintiffs in the state court litigation referenced below.

11. On or about September of 2016, due to dissatisfaction with its services, WWPDC allowed its contract with Fiberglass World to expire. Thereafter it began using VPC exclusively.

12. WWPDC delivered the molds from Fiberglass World to VPC.

13. VPC used the molds to build the waterpark slide parts.

14. WWPDC would construct and assemble the parts according to the design agreed upon by the customer.

15. By October of 2016, WWPDC was experiencing financial trouble and Debtor sought alternatives to inject capital into the company. Attorney Hogan and the Debtor had discussions about VPC investing in WWPDC. However, a deal never materialized.

16. Thereafter, the Debtor filed his personal bankruptcy petition.

17. After Debtor filed for bankruptcy, WWPDC demanded that VPC return the molds. VPC refused because at the time it asserted that WWPDC allegedly owed money to VPC, which WWPDC disputed. Monies in an agreed amount have since been paid but the molds have yet to be returned.

18. During discussions with VPC, Attorney Hogan pointed out that the Debtor had allegedly failed to list creditors in his bankruptcy schedules.

19. Debtor did not list these creditors, the ones for who he gave a personal guaranty, because, at the time, he was unaware of any claim. In fact, Debtor does not believe that there ever was a valid claim.

20. Upon information and belief, the Chapter 7 Trustee for Debtor's case Michael J.

3

O'Connor, Esq. had substantial discussions with Attorney Hogan regarding the purchase of Debtor's stock in WWPDC but, eventually, closed the case because no serious offer was forthcoming.

21. This was no surprise, because in 2018 Cap Com Federal Credit Union ("Cap Com") had a blanket lien on the assets of WWPDC of approximately $580,000 and any offer would have taken the stock subject to Cap Com's lien on WWPDC's assets.

22. After the bankruptcy case was closed, Debtor formed a new company Wizard Works Design Group, LLC which, along with WWPDC and Debtor, entered into an agreement with Cap Com whereby the over encumbered assets of WWPDC were transferred to Wizard Works Design Group, LLC in consideration of a cash payment of $5,000 and then payments over time tied to percentage of net income of that entity over 5 years, subject to other terms and conditions with Cap Com's lien to be released only upon full payment of the amounts set forth under the agreement (see exhibits to Exhibit "H").

23. On March 28, 2018, Virtual Polymer Compounds, LLC ("VPC"), Stockton Delta Resort, LLC ("SDR") , Kerrville Camp-Resort, LLC, ("KCR"), Lazy River Resort, LLC ("LRR"), Hill Country Resorts, LLC ("HCR") and Quarryville Resorts, LP ("QR") commenced a legal action in the Supreme Court of the State of New York, County of Orleans against WWPDC <u>and the Debtor</u> for breach of the contracts listed in Paragraph 8 above. The caption for this case is <u>Virtual Polymer Compounds LLC, et al v. Wizard Works Product Development Company, Inc. et. al.</u>, Index No. 18-44686 (the "Money Damages Action"). *See* Summons and Complaint annexed hereto as Exhibit "E" (hereinafter the "Complaint"). The complaint in no way alleges any fraud on the part of the Debtor or, for that matter, his company and simply contains garden variety breach of contract claims.

24. The attorneys for Plaintiffs are Attorney Hogan and the HoganWillig, PLLC law firm.

4

25.   In Paragraphs 26 and 27 of the Complaint in the Money Damages Action, Plaintiffs recognized that Debtor had filed for bankruptcy. However, they alleged that Debtor failed to name SDR and KCR as creditors, seemingly as justification for violating the discharge injunction. SDR and KCR demanded compensatory damages <u>from Debtor</u> in the following amounts: (i) SDR in the amount of $100,000.00 and (ii) HCR in the amount of $21,000.00.

26.   WWPDC and Debtor answered the Money Damages Action and raised as an affirmative defense the bankruptcy and counterclaimed for damages and went so far as to provide a copy of the Debtor's bankruptcy discharge.  Exhibit "F" (page 8 and Exhibit "A" to the answer).

27.   Also on March 28, 2018, VPC commenced another legal action in New York State Supreme Court Orleans County captioned <u>Virtual Polymer Compounds LLC, et al v. Wizard Works Product Development Company, Inc. et. al.</u>, Index No. 18-44685 (the "Lien Law Action"). *See* Summons and Complaint annexed hereto as Exhibit "G". This lawsuit also names Debtor but seeks declaratory relief as to lien rights to the disputed molds under New York's lien law. The defendants answered the Lien Law Action as well and disputed the amounts due and demonstrated that although they disputed any amount, at best only $2,380.57 was due and had been paid into the court's registry to discharge the lien.  Exhibit "H."

28.   Despite the raising of bankruptcy as an affirmative defense and the lien having been satisfied, the litigations have gone on with a hearing in November 2019 and conference in both cases scheduled for July 14, 2020. Exhibits "I" (transcript of hearing that references both the Money Damages Action and Lien Law Action) and "J" (E-Courts' docket report referencing an upcoming conference in both cases).

29.   For the reasons stated herein, Debtor requests that the Court issue an Order directing

5

the Clerk to reopen the bankruptcy case so that the Debtor can bring a motion for contempt of the discharge injunction and to recover attorney's fees and damages from SDR, KCR, Attorney Hogan and HoganWillig, PLLC. The violations are clear. The Money Damages Action seeks significant monetary damages against Debtor and has been used improperly as a tool to gain leverage over Debtor with respect to the Lien Law Action which, despite payment into court, has still not resulted in the return of the molds.

30.     During the course of the state court litigations, Debtor disputed that any amount was due and demonstrated that the amount of money alleged by VPC to support a lien on the molds was grossly inflated. In fact, the amount that was paid into court was $2,380.57, as opposed to the $41,485 that was alleged to be owing in the Lien Law Action. Upon information and belief, VPC eventually conceded that it was the smaller amount that was allegedly due and the monies have long since been paid. The defendants paid the monies, which they denied were due, simply to avoid incurring attorney's fees to further dispute the issue.

## JURISDICTION

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334(a) and 28 U.S.C. §157(a). This is a core proceeding under 28 U.S.C.§157 (b)(1) and (8) as the Debtor asserts a violation of the discharge injunction under 11 U.S.C. §524(a).

## BASIS FOR RELIEF

32.     Rule 5010 of the Bankruptcy Rule states that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code." Section 350 of the Bankruptcy Code, 11. U.S.C. §350 states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

6

33. The Courts have "wide latitude" to exercise discretion to reopen a case. To decide whether there is cause to reopen a case, the Courts may consider "numerous factors including equitable concerns and ought to emphasize substance over technical considerations." *In re Emmerling*, 223 B.R. 860, 864 (2d Cir. 1997); *In re Moyette*, 231 B.R. 494, 497 (E.D.N.Y. 1999). These factors include: (1) the length of time that the case was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case; (3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum; whether any parties would suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit to the debtor by reopening; and (6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen. *In Re Kim*, 566 B.R. 566 B.R. 9 (S.D.N.Y. 2017). "The burden is on the movant to demonstrate cause for reopening the bankruptcy case." *In re Kim*, 566 B.R. 9 (S.D.N.Y. 2017) citing *In Re Otto*, 311 B.R. 43, 47 (E.D. PA. 2004).

34. "A proceeding to enforce the discharge injunction is a core proceeding under section 157(b)(2)(O) of title 28, and <u>courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined</u>." 4 Collier on Bankruptcy P 524.02 (16th 2020) (emphasis added).

35. In this case, the bankruptcy case should be reopened to allow for the commencement of proceedings to enforce the discharge injunction against SDR, KCR, Corey Hogan, Esq. and HoganWillig PLLC because the enumerated factors operate in Debtor's favor. Focusing on substance, rather than technical specifications, the most important factor is whether the underlying reason for reopening the case is meritorious.

36. Here, the Debtor requests reopening because the discharge injunction has been breached by the filing and prosecution of a lawsuit, the Money Damages Action, that seeks to impose personal responsibility for prepetition obligations and for other improper purposes to gain leverage with regard to the molds. The litigations are ongoing despite the Plaintiffs' and their attorney's undisputed knowledge of the discharge.

37. The underlying reason is meritorious because Debtor should be allowed to enforce the discharge injunction to halt the state court litigation against him and to prevent further damages to him in the form of harassment and legal fees. Indeed, Debtor has already incurred substantial legal fees defending the lawsuit. It is apparent that the Money Damages Lawsuit was brought to gain leverage with regard to ownership of the molds. While the defense of bankruptcy was brought up in state court, it does not seem to have stopped the litigation.

38. "Pursuant to § 727(b), when a debtor receives a discharge under chapter 7 of the Bankruptcy Code, he is discharged from all personal liability relating to pre-petition debts. In turn, this discharge triggers an injunction under § 524(a)(2), which states that no act to collect, recover, or offset any discharged debt may be commenced as to the personal liability of a debtor. 11 U.S.C. § 524(a)(2)." *In re Morgan, 578 B.R. 712, 716 (Bankr. N.D.N.Y. 2017)*

39. In order to prove a discharge injunction violation, the debtor must establish that the creditor: "(1) had notice of the debtor's discharge; (2) intended the actions that constituted the violation; and (3) acted in a way that improperly coerced or harassed the debtor" (internal quotations and citations omitted). *In re Morgan*, 578 B.R. at 716 citing *Bates v. CitiMortgage, Inc.*, 844 F.3d 300, 304 (1st Cir. 2016). The Supreme Court has clarified that the standard is whether there was

"fair ground for doubt" as the whether the creditor's actions were wrongful. *Taggart v. Lorenzen, 139 S.Ct. 1795, 1799 (2019).*

40.    A post-discharge lawsuit to recover on personal liability is the clearest example of the type of activities prohibited by this provision. "A discharge injunction violation may be punished as a civil contempt of court and requires a two-part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it." *In re Haemmerle*, 529 B.R. at 26 (citations omitted). A violator's attorney may also be held personally liable for willfully violating the automatic stay.

41.    In their Money Damages Action complaint, Plaintiffs alleged that Debtor had filed for bankruptcy which unequivocally proves that they knew of the bankruptcy. Notwithstanding, they demanded money damages from Debtor in his personal capacity that arise from prepetition obligations. And, the answer and counterclaim in the Money Damages Action expressly raised the defense of bankruptcy and even provided a copy of the bankruptcy discharge.

42.    Therefore, even if there was some doubt in Plaintiffs' mind that the fact that they were not listed as creditors somehow absolved them of the discharge, they of course knew of the bankruptcy because their complaint admits it and the answer put them on notice that Debtor felt strongly that their actions were wrongful.  There is no legal dispute that even unlisted debts are discharged in a no asset Chapter 7 case and, as a result, Plaintiffs and their attorneys were obligated to address the issue by researching the question once it was raised and seeking guidance from the court. They did not and, instead, proceeded with the litigations. Because Plaintiffs are charged with the actions of their attorney, they too breached the bankruptcy discharge injunction. *In re Sterling, 933 F.3d 828 833 (7th Cir. 2019).*

43. The fact that Debtor failed to list these creditors in his schedules, he did not and does not believe he owes them any money, does not justify the commencement of a legal action in State Court without permission from the Bankruptcy Court. In their Complaint, Plaintiffs alleged that Debtor failed to list all his creditors, seemingly to justify the commencement of the legal action in violation of the bankruptcy discharge. However, the fact that Debtor failed to name these creditors in his schedules does not mean that they were allowed to file claims in State Court.

44. Prepetition debts are discharged in a no asset Chapter 7 bankruptcy even if the creditors were not served with notice of the bankruptcy.

45. There is no "fair ground for doubt" on this point. *Taggart at 1799.* "Section 523(a)(3) of the Bankruptcy Code seeks to protect the rights of an unlisted creditor from having its debts discharged by a debtor without having had notice of the case.... However, it is also well accepted that the failure to give notice to a creditor will be disregarded in a Chapter 7 no asset case and that in such cases failure to schedule a prepetition debt will not preclude the discharge of that debt. *In re Haemmerle*, 529 B.R. 17, 24 (Bankr. E.D.N.Y. 2015) (internal quotes and citations omitted) *See also, In re Mohammed*, 536 B.R. 351, 357 (Bankr. E.D.N.Y. 2015). This was a no asset Chapter 7 case.

46. This is not a case where an unlisted creditor sent a demand letter and then was advised of the discharge and ceased collection efforts. This is not even a case where a party plaintiff was allegedly unaware of the defendant's prior bankruptcy discharge and could be excused for having commenced an action. In such a case, an appropriate response would have been to inform the plaintiff of the discharge. If the plaintiff did not then voluntary discontinue the lawsuit, a contempt motion would be necessary.

10

47. Here, the attorney for the Plaintiff not only knew of the bankruptcy, he participated by negotiating with the Trustee. At best, the attorney can argue that he mistakenly thought that because alleged creditors were not listed, they were not discharged. But, the law is to the contrary with respect to a no asset Chapter 7 case and an attorney, especially one who participated in the case, should be charged with knowledge of this blackletter bankruptcy rule. At worst, he was put on notice by the answers in the lawsuits that Debtor felt there was an ongoing violation and should have addressed the issue. Instead, the litigations continue.

48. Legally, Plaintiffs could not commence an action against the Debtor even if they were not listed in his schedules. This is not a case where they did not know of the bankruptcy; their attorney participated in that case!

49. Plaintiff filed for Chapter 7 bankruptcy and the Chapter 7 Trustee reported that there were no assets for distribution. As a result, Plaintiffs' claims were discharged, even if they were not listed as creditors to the bankruptcy. The commencement of a legal action for money damages against the Debtor, for obligations that arose prepetition and to gain leverage with regard to the molds, is a clear violation of the bankruptcy discharge.

50. Here, the fact that Attorney Hogan and his firm and his company are involved as attorneys for VPC and the other Plaintiffs and were well aware of the bankruptcy is especially troublesome and should be addressed by this Court.

**WHEREFORE,** the Debtor respectfully requests the entry of an order reopening the bankruptcy case in order to afford Debtor the right to commence enforcement proceedings against SDR, KCR, Corey Hogan, Esq. and HoganWillig PLLC for violation of the bankruptcy discharge injunction and that the Court grant such other and further relief as may be just, necessary and proper.

Dated: June 30, 2020                                                    Respectfully submitted,

/s/ *Javier J. Mendez*
Javier J. Mendez, Esq.
Paul A. Levine, Esq.
LEMERY GREISLER LLC
50 Beaver Street
Albany, New York 12207
(518) 433-8800

*Attorneys for Debtor*