UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

    MARK D. ARAGONA,

Case No. 17-11080
Chapter 7

Debtor.

APPEARANCES:

Paul A. Levine, Esq.
Javier Jose Mendez, Esq.
Lemery Greisler, LLC
*Attorneys for Debtor, Mark D. Aragona*
677 Broadway, 8th Floor
Albany, New York 12207

Steven M. Cohen, Esq.
Jeffrey B. Novak, Esq.
Tiveron Law PLLC
*Attorneys for Virtual Polymer Compounds, LLC, Stockton Delta Resort, LLC, Kerrville Camp-Resort, LLC, Lazy River Resort, LLC, Hill County Resorts, LLC, Quarryville Resorts, LP, HoganWillig PLLC and Corey Hogan, Esq.*
2410 North Forest Road, Suite 301
Amherst, New York 14068

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER

Currently before the Court is a motion for partial summary judgment filed by Mark Aragona (the "Debtor" or "Aragona") requesting the Court find the Water Parks Group and PG Plaintiffs (both defined *infra*) willfully violated his discharge injunction and should be held in civil contempt. (ECF No. 93).[1]

---

[1] Citations to the docket of the main case (No. 17-11080) will be referenced as "(ECF No. #);" citations to the docket of the adversary proceeding (No. 20-90021) will be referenced as "(AP No. #)."

1

In reply to the Debtor's motion, Virtual Polymer Compounds, LLC ("VPC"), Lazy River Resort, LLC ("LRR"), Hill County Resorts, LLC ("HCR"), Quarryville Resorts, LP ("QR"), HoganWillig PLLC[2] ("HoganWillig") and Corey Hogan, Esq. ("Atty Hogan") (collectively, the "Water Parks Group") filed a Motion for Summary Judgment seeking dismissal of the claims against them. Similarly, Stockton Delta Resort, LLC ("SDR"), Kerrville Camp-Resort, LLC ("KCR"), HoganWillig and Atty Hogan[3] (collectively, the "PG Plaintiffs")[4] have moved for summary judgment seeking dismissal of all causes of action against them. The Water Parks Group and PG Plaintiffs argue they did not violate the discharge injunction but add, if a violation is found, civil contempt sanctions would be inappropriate because their actions were objectively reasonable. (ECF No. 104). The Court has jurisdiction via 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(A) and 1334(b).[5]

**FACTS**

The present matter is comprised of a complex factual and legal history which stems from the interactions of the Debtor, as the owner of Wizard Works Product Development Company, Inc. ("Wizard Works"), with members of the Water Parks Group and PG Plaintiffs.

**I.     Background on Debtor's Business Operations**

The Debtor was the president of Wizard Works, a New York State corporation, established to design and engineer "custom waterslide molds . . . used to make waterslide parts."

---

[2] As of January 26, 2023, HoganWillig PLLC (DOS ID: 2251568) is now named Tiveron Law PLLC. N.Y. Dep't of State, Div. of Corp., *Corporation and Business Entity Database*.

[3] Atty Hogan and HoganWillig PLLC are members of both the Water Parks Group and PG Plaintiffs because they were involved in all aspects of the state court cases.

[4] The PG Plaintiffs sued the Debtor individually based upon the personal guaranties provided to SDR and KCR.

[5] Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2024) ("Bankruptcy Code").

(ECF No. 1 at 13, ECF No. 31 at ¶¶ 19–21). To complete these slides, Wizard Works provided its waterslide molds to VPC which, in turn, supplied the raw materials and crafted the waterslide parts. (ECF No. 31 at ¶ 24–25).

From October 21, 2014, through July 20, 2016, Wizard Works entered into contracts with the members of the Water Parks Group and PG Plaintiffs, except for HoganWillig and Atty Hogan,[6] for the development of waterpark attractions. (ECF No. 31 at ¶¶ 23–24). Crucially, the Debtor personally guaranteed the contracts with the PG Plaintiffs. (ECF No. 31 at ¶ 23).

In October 2016, Wizard Works began to struggle financially when issues arose with previously built waterslides. (ECF No. 93, Ex. N at 61–62, 68). On July 27, 2017, the Debtor sent an email to Zachary Bossenbroek ("Bossenbroek"), owner of SDR, KCR LRR, HCR and QR stating: "Wizard Works [is] no longer in operation. As such, I am devoting all of my energies to my new endeavors and I will not be addressing any Wizard Works business going forward." (ECF No. 43, Ex. N).

In June 2017, the Debtor founded and began operating as Wizard Works Design Group, LLC. (ECF No. 43 at 23). Five months later, in November 2017, the Debtor formed a second corporation: Wizard Water Slides, LLC. (ECF No. 43 at 23). It appears the Debtor has been utilizing both entities since the winding down of Wizard Works. (ECF No. 43 at 23–24).

II. **Bankruptcy Case**

The Debtor filed an individual Chapter 7 voluntary petition on June 7, 2017 and listed himself as owning 100% of Wizard Works. (ECF No. 1). The Debtor's petition states Wizard Works "is in the process of ceasing operations. Debts of entity exceeds value of assets." (ECF No. 1 at 13). Aragona's petition lists fifty-nine unsecured creditors in Schedule E/F, with all but

---

[6] VPC is owned by Atty Hogan. (ECF No. 31 at ¶ 26). However, Atty Hogan did not enter into the agreement between Wizard Works and VPC in a personal capacity.

3

three[7] classified as business debts. *Id*. Combined, the listed business debts total $998,965.16. *Id*. Notably, VPC is the only member of the Water Parks Group or PG Plaintiffs listed as a creditor, with six debts totaling $77,275.00. (ECF No. 1 at 35–37). In Schedule H, the Debtor lists Wizard Works as a codebtor on fifty-four[8] of the unsecured debts totaling $978,869.13.

On September 11, 2017, the Chapter 7 Trustee, Michael J. O'Connor, Esq., determined this was a no asset case and filed a Report of No Distribution. On September 18, 2017, the Debtor received his discharge. (ECF No. 17). A final decree was entered on October 10, 2017. (ECF No. 19).

### III.     State Court Proceedings

After Aragona received his discharge, the Water Parks Group and PG Plaintiffs commenced an action in New York State Supreme Court against Wizard Works for breach of contract (*Virtual Polymer Compounds, LLC, et al. v. Wizard Works Product Development Company, Inc., et al.*, Index No. 18-44686) (the "Money Damages Action"). (AP No. 1 at ¶ 8). The Water Parks Group sought compensatory damages totaling $402,836.91 from Wizard Works. (ECF No. 104, Ex. B at 7–14).

In addition to suing Wizard Works, the PG Plaintiffs included causes of action against Aragona individually based upon the personal guaranties contained in their contracts. (ECF No. 104, Ex. B at 10–12; ECF No. 104, Ex. B at ¶¶ 59, 72). The PG Plaintiffs sought compensatory damages against the Debtor of $100,000.00 and $21,000.00. *Id.* at 14. The state court complaint

---

[7] The three unsecured creditors with a claim not attributed to the business are Richard Weisz, Esq., Time Warner Cable and Verizon. (ECF No. 1 at 30, 34–35).

[8] Wizard Works is not listed as a codebtor for the debts of Capital Communications Federal Credit Union and PayPal Credit Services. (ECF No. 1 at 22, 28).

notes the Debtor's bankruptcy but also specifically indicates the PG Plaintiffs were not listed as creditors in Aragona's bankruptcy petition. *Id.* at ¶¶ 22–27.

On September 13, 2019, the Debtor submitted an answer to the complaint asserting his Chapter 7 discharge as an affirmative defense to all causes of action against him. (ECF No. 31, Ex. 7 at 7). On September 27, 2021, the Debtor and PG Plaintiffs filed a Stipulation of Partial Discontinuance dismissing the Money Damages Action against Aragona. (ECF No. 104, Ex. X). The Money Damages Action is still being litigated with respect to Wizard Works.

On the same day the Money Damages Action was commenced, VPC requested a declaratory judgment as to the parties' rights to the water slide molds. (*Virtual Polymer Compounds LLC v. Wizard Works Product Development Company, Inc., et al.*, Index No. 18-44685) (the "Lien Law Action"). (ECF No. 104, Ex. C).

In their answer, the Debtor, Wizard Works and Wizard Water Slides, LLC disputed the amount due to VPC and its claim to a possessory interest in the molds. (ECF No. 93 at ¶ 15). The answer, dated September 17, 2019, also referenced the Debtor's filing for bankruptcy. *Id.* This action, like the Money Damages Action, is still being litigated.

### IV.    Reopening of the Bankruptcy Case

On June 30, 2020, the Debtor filed a motion to reopen his bankruptcy case to initiate proceedings in this Court against the Water Parks Group and PG Plaintiffs. (ECF No. 20). Aragona contends the discharge injunction is being violated by the state court actions. *Id.* A supplement to the motion was filed on July 13, 2020. (ECF No. 24). On July 29, 2020, the Court granted the Debtor's motion and reopened the case.[9] (ECF No. 26).

---

[9] Shortly after the case was reopened, on September 1, 2020, the PG Plaintiffs filed a motion to vacate the Debtor's discharge. (ECF No. 27). The Debtor filed a response and amended same on September 23, 2020. (ECF Nos. 35, 37). A hearing on the motion was held on September 30, 2020, after which the motion to vacate was withdrawn with prejudice per terms on the record. (ECF No. 42).

5

a. **Motion for Contempt**[10]

On September 4, 2020, the Debtor filed a "Motion to Hold Parties in Contempt for Violation of Debtor's Discharge Injunction" naming all members of the Water Parks Group and PG Plaintiffs ("Motion for Contempt").[11] (ECF No. 31). The Water Parks Group and PG Plaintiffs filed a response on September 23, 2020, to which the Debtor replied on September 28, 2020. (ECF Nos. 39–40).

b. **Motions for Summary Judgment**

On November 15, 2022, the Debtor filed a motion for partial summary judgment. (ECF No. 93). Aragona filed supplemental pleadings on November 28, 2022. (ECF No. 99). On January 4, 2023, the Water Parks Group and PG Plaintiffs filed a response to the Debtor's motion and affirmatively moved for summary judgment. (ECF No. 104). The Debtor replied on January 25, 2023. (ECF No. 110). On February 1, 2023, the Water Parks Group and PG Plaintiffs filed a Memorandum of Law in Further Support of [their] Motion for Summary Judgment. (ECF No. 111).

A hearing on both motions for summary judgment was held on February 22, 2023, after which the matter was placed on reserve by the Court. (ECF No. 112).

## ARGUMENTS

The Debtor argues the Water Parks Group and PG Plaintiffs conspired with one another and "made a deliberately conscious, strategic and willful decision to file the Money Damages Action . . . ." (ECF No. 110-2 at 17). The Debtor indicates that while the Water Parks Group did

---

[10] While the motion for contempt was pending, the Water Parks Group and PG Plaintiffs, who were both represented by HoganWillig, also filed an adversary proceeding objecting to dischargeability. The adversary proceeding was dismissed with prejudice on July 9, 2021. (ECF No. 34).

[11] VPC, LRR, HCR and QR were included in the motion despite not being named in the Debtor's motion to reopen the bankruptcy case.

not bring a claim against the Debtor individually in the Money Damages Action, they nonetheless conspired with the PG Plaintiffs and violated Aragona's discharge.

The Water Parks Group disagrees stating, "commencement of legal proceedings against Wizard Works does not violate the Debtor's bankruptcy discharge" because their request for money damages was only against Wizard Works and not the Debtor individually. (ECF No. 104-2 at 6).

The PG Plaintiffs argue, based upon the Debtor's failure to list them as creditor along with assurances by Aragona, they believed his obligation to them was not discharged. They further contend, since the Debtor had not breached their contracts prior to filing for bankruptcy, the "debt" owed to them is a postpetition debt.

In terms of the Lien Law Action, the Water Parks Group and PG Plaintiffs argue the "inclusion of the Debtor as a party in the Lien Law Action did not constitute a violation of the Debtor's Discharge" since "[t]he Lien Law Action was not an effort to collect on a debt of the Debtor." *Id.* at 7.

## DISCUSSION

### I. Motions for Summary Judgment

Federal Rules of Civil Procedure (FRCP) 56[12] states, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing dueling summary judgment motions, a [] court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against each motion." *O'Farrell v. Lewiston Town Bd.*,

---

[12] FRCP 56 is adopted by Federal Rules of Bankruptcy Procedure ("FRBP") 7056 which applies to adversary proceedings. FRBP 7056 applies to contested matters via FRBP 9014(c).

1996 U.S. Dist. LEXIS 5224, at *2–3 (citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985)).

Pursuant to FRCP 56(c), the Court should grant summary judgment to the moving party if it determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.4 (1986) (quoting FRCP 56(c)) (internal quotation marks omitted). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, No. 9:06-CV-401, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4), *aff'd in part, remanded in part*, 375 F. App'x 73 (2d Cir. 2010).

If the movant meets its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, it must present "significantly probative" evidence that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249.

## II. Violation of Discharge

11 U.S.C § 524 states in pertinent part:

> (a) A discharge in a case under this title…
>  . . . .
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived….

11 U.S.C. § 524.

8

### a. The Collusion Argument

Aragona argues, despite the fact the PG Plaintiffs were the only ones to bring an action against him personally, the Water Parks Group was acting in concert with the PG Plaintiffs. However, there is nothing mischievous or inherently wrong for parties whose claims share similar facts and circumstances to bring their actions together. In New York, "[i]t is preferrable to try related actions together, in order to avoid a waste of judicial resources and the risk of inconsistent verdicts." *Leyro v. Gospel Spreading Assn.* 2023 N.Y. Misc. LEXIS 4063, at * 2 (N.Y. Sup. Ct. 2023) (citing *Neckles v. VW Credit, Inc.,* 23 A.D.3d 191 (1st Dept. 2005).

Further, there is nothing to suggest Bossenbroek and Atty Hogan's control over the Water Parks Group and PG Plaintiffs is sufficient to label them "puppet masters." The members of the Water Parks Group and PG Plaintiffs are legally unique entities and there is no evidence they are being used as alter-egos or part of an intricate scheme.

### b. Lien Law Action

Courts interpreting § 524 have found the discharge injunction does not automatically bar the filing of a post-discharge declaratory judgment.  For example, the Bankruptcy Appellate Panel for the Eighth Circuit has found, "[a]s is evident from the plain language of the statute the discharge injunction applies to *in personam* actions. It does not apply to *in rem* actions…. The declaratory judgment is limited to the first step and a clarification about priority." *In re Annen* 246 B.R. 337, 339–40 (B.A.P. 8th Cir. 2000).

Other circuits have also determined seeking a declaratory judgment does not violate the discharge injunction.

> Count I, the declaratory judgment request, does not violate the discharge injunction. The Seventh Circuit has noted that " [p]ermitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180

9

> (7th Cir. 1994). Other courts have agreed that an order seeking a clarification or determination of one's rights is not an attempt to collect and therefore is not a violation of the discharge injunction. *See In re Taylor*, No. 13 C 07743, 526 B.R. 719, 2014 U.S. Dist. LEXIS 120518, 2014 WL 4297238, at *5-6. (N.D. Ill. Aug. 29, 2014) (holding that a creditor seeking a state court declaratory judgment regarding her rights so as to be able to proceed in an adversary proceeding in bankruptcy court did not violate the discharge injunction); *see also Bank One Wisconsin, N.A. v. Annen* (*In re Annen*), 246 B.R. 337, 338, 340 (8th Cir. BAP 2000). In Count I Napleton is seeking only a determination of its rights under the right of first refusal. Because no steps are taken there to collect a debt, Napleton and its attorney did not violate the discharge injunction or commit civil contempt regarding Count I.

*In re Michael Bahary & Steven Bahary P'ship*, 528 B.R. 763, 772 (Bankr. N.D. Ill. 2015).

The Court finds these rationales convincing and concludes the filing of the Lien Law Action did not violate Aragona's discharge. Since the actions of the Water Parks Group, excluding Atty Hogan and HoganWillig, did not violate the Debtor's discharge, the Court will focus the remainder of its analysis on the actions of the PG Plaintiffs.

### c. Money Damages Action

On July 9, 2021, the parties stipulated "any and all personal obligations or claims against Debtor they have alleged or could have alleged in the Money Damages Action were discharged as of September 18, 2017." (ECF No. 104, Ex. U). Moreover, at his deposition in this matter, Atty Hogan admitted he was not sure whether they were violating Aragona's discharge when filing the Money Damages Action. His testimony follows:

> Q.  Did you consider going to the Court, either the state or the bankruptcy court, to get a determination once the defenses were raised as to whether what you were [sic] violated the discharge?
>
> A.  I don't think so. That's why we put it in the Complaint. We laid it right out there and put it on a platter for Mark [Debtor] to let us know what his position was about that.
>
> ….
>
> Q.  With respect to these bankruptcy issues and the discharge issues that you've been talking about, did you consult with any bankruptcy expert within the Hogan firm to get some guidance on these matters?

10

> A.   I'm sure we talked about it to try to make a determination as to the best way to proceed, and that was -- the determination was ultimately what we decided to do.
>
> ….
>
> Q.   If that's the case, why would you have named him personally?
>
> A.   Because I think we weren't sure. We put it in the Complaint to try to get a reaction out of Mark or his attorneys….
>
> Q.   What -- what -- what reaction were you trying to get? What do you mean by that, trying to get a reaction out of his attorneys? What was the purpose of that?
>
> A.   Why he didn't list Stockton or Kerrville on his Chapter 7 filing when he listed all his other business debts. He listed a million dollars worth, and he didn't list Stockton or Kerrville. . . .

(ECF No. 93, Ex. C at 73, 75, 79–80).

Atty Hogan admits there were some internal discussions between him and HoganWillig attorneys regarding the propriety of naming the Debtor in the Money Damages Action. However, the decision to include Aragona individually "to get a reaction out of [the Debtor] and his attorneys" is as problematic as it is misguided. *Id*. Bankruptcy courts have advised:

> When questions arise as to the application of the automatic stay or discharge injunction to a transaction, it is best for a creditor to seek relief from the bankruptcy court. As one bankruptcy judge sagely noted:
> "Where there is uncertainty regarding the appropriate action with respect to a debt, the creditor should seek an adjudication in the bankruptcy court . . . A creditor takes a calculated risk, under threat of contempt of § 524 or sanctions under the § 362 automatic stay where it undertakes to make its own determination of what the stay or discharge in bankruptcy means."

*In re Michael Bahary & Steven Bahary P'ship*, 528 B.R. at 773 (emphasis in original) (citing *In re Gray,* 97 B.R. 930, 936 (Bankr. N.D.Ill. 1989) (citations omitted)).

The PG Plaintiffs naming the Debtor and seeking money damages from him individually violates § 524 as it was an attempt to collect on a discharged debt. The next inquiry is whether

11

they should be held in contempt for the transgression pursuant to *Taggart v. Lorenzen*, 139 S. Ct. 782 (2019).

### d. The *Taggart* "Objectively Reasonable" Standard

In determining whether the PG Plaintiffs should be found in contempt, this Court looks to *Taggart* which instructs:

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is *no objectively reasonable basis* for concluding that the creditor's conduct might be lawful.

*Taggart*, 139 S. Ct. at 1799 (emphasis added).

In performing its analysis, the Court should apply an objective standard. "[A] party's subjective belief that [it] was complying with an order ordinarily will not insulate [it] from civil contempt if that belief was objectively unreasonable." *Id.* at 1802; *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191(1949). Under the standard delineated in *Taggart*, "civil contempt may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or of the statutes that govern its scope." *Taggart*, 139 S. Ct. at 1802.

The PG Plaintiffs argue their actions were objectively reasonable as they believed the discharge did not apply to the personal guaranties provided by the Debtor. (ECF No. 104–2 at 1 –14). They point to emails sent by the Debtor after he filed his bankruptcy in which Aragona indicated his continued commitment to the completion of the waterslides. *Id*. They contend the Debtor had no intention of discharging the personal guaranties. However, § 524 is not clairvoyant and communications from Aragona *prior* to discharge are insufficient to establish a credible exemption.

The PG Plaintiffs rely upon *In re Texaco Inc.*, 254 B.R. 536 (Bankr. S.D.N.Y. 2000). They posit Aragona's continued performance of the contracts containing the personal guaranties caused the debts to pass through the bankruptcy.[13] The court in *Texaco* elaborated:

> [I]f the debtor continues to operate under and derive all of the economic benefits of the contract or lease then the debtor retains all of its obligations and burdens and the contract or lease passes through the bankruptcy unaffected by it, just the same as if the contract or lease had been assumed under Section 365.

*In re Texaco*, 254 B.R. at 558.

As previously discussed, the PG Plaintiffs point to emails sent by the Debtor after the commencement of his bankruptcy case in which he indicated his continued commitment to the completion of the waterslides. (ECF No. 104-2 at 11–14). However, the PG Plaintiffs fail to mention the Debtor's email of July 27, 2017, to Bossenbroek where Aragona specifically stated: "I will not be addressing any Wizard Works business going forward." (ECF No. 43, Ex. N). After that email, and before discharge, Aragona ceased to receive any benefit from the contracts. These facts differ from those in *Texaco* in that the latter involved continued performance *after* discharge. What's more, guaranties are not considered executory contracts, further separating the present matter from that of *Texaco*. *See In re Leibinger-Roberts, Inc.*, 105 B.R. 208, 213 (Bankr. E.D.N.Y. 1989) ("A guaranty agreement is not executory because it holds no future benefit for the guarantor.").

Next, the PG Plaintiffs argue the Debtor's personal guaranties did not exist at the time of the filing and could not have been discharged. This argument is erroneous. Section 523 lists the exemptions to discharge and states in pertinent part, "A discharge . . . does not discharge an

---

[13] Pursuant to § 727(a)(10), a waiver of discharge must be made in writing and approved by the Court after the order for relief.

individual debtor from any debt . . . ." Section 523 then enumerates twenty exceptions to discharge, none of which are personal guaranties. 11 U.S.C. § 523.

The Debtor's personal guaranties were included in the contracts with the PG Plaintiffs and were contingent claims once pen met paper. "Even a right to payment contingent on future events is a claim under Section 101(5) if it 'result[s] from pre-petition conduct fairly giving rise to that contingent claim.'" *In re Old Mkt. Group Holdings Corp.*, 647 B.R. 104, 113 (Bankr. S.D.N.Y. 2022) (quoting *Elliott v. GM LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 156 (2d Cir. 2016)); *see also* 2 COLLIER ON BANKRUPTCY ¶ 101.05 (16th ed. Rev. 2011) ("Neither the contingency of the debt nor the immaturity of the obligation affects whether a right to payment is a claim."). It is beyond dispute the personal guaranties are subject to the Debtor's bankruptcy discharge.

As previously noted, the PG Plaintiffs admit they knew of the Debtor's discharge prior to initiating the Money Damages Action. (ECF No. 93 at ¶ 33). Even if they had not known a discharge enjoins creditors from pursuing discharged debts, HoganWillig, the firm retained by SDR and KCR, had a bankruptcy practice and should have been well-aware of this fact. *Id.* at ¶ 35.2.

The Court finds the PG Plaintiffs' commencement of the Money Damages Action violates the discharge injunction and is not objectively reasonable under *Taggart*. It therefore logically follows these justifications are, likewise, insufficient to warrant the continuation of the Money Damages Action. This finding is further supported by the fact the PG Plaintiffs failed to dismiss the action even *after* the Debtor raised the bankruptcy discharge as an affirmative defense.

The PG Plaintiffs rely upon *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005) and contend the Debtor "returned to the fray" by litigating the Money Damages Action and therefore waived his discharge protection. *Id.* at 1024. However, the circumstances in the present matter are fundamentally different from *Ybarra* and the application of the latter to the former is improper.

The issue before the *Ybarra* court implicated a state court's award of attorney fees and costs earned, in relevant part, after the debtor filed for bankruptcy protection. *Id.* at 1020–21. The parties disagreed as to whether postpetition fees and costs were discharged when the debtor restarted litigation against their creditor. *Id.* at 1021. The *Ybarra* court found postpetition fees are not discharged when "the debtor voluntarily 'pursued a whole new course of litigation,' commenced litigation, or 'returned to the fray' voluntarily." *Id.* at 1024 (quoting *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 533–34 (9th Cir. 1998)).

Here, the Debtor did not return to the fray because he never left it. In *Ybarra,* the litigation had been dismissed but the debtor himself had the dismissal set aside. *Id.* at 1020. That is certainly not the present case. Likewise, the Debtor's counterclaims cannot be considered a "return to the fray" as the counterclaims are not the pursuit of "a whole new course of litigation." *Id.* at 1024 (quoting *Siegel*, 143 F.3d at 533–34). Rather, the counterclaims are in response to an action that should never had been initiated. As such, the PG Plaintiffs' argument that *Ybarra* provides an objectively reasonable basis for the continuation of the Money Damages Action is not convincing.

The PG Plaintiffs note the Debtor did not immediately raise his discharge as an affirmative defense in the Money Damages Action. The action was initiated on March 28, 2018. It was not until September 13, 2019, when the Debtor answered and raised the discharge. (ECF

15

No. 93, at 3; ECF No. 31, Ex. 7). The Court finds this fact irrelevant for the present discussion because Aragona raised the discharge when he answered the state court complaint.[14]

For all the reasons stated, the Court finds that the commencement and continuation of the Money Damages Action by the PG Plaintiffs against the Debtor was objectively unreasonable.

### e. Joint and Several Liability

The PG Plaintiffs violated the Debtor's discharge injunction when they named him as a defendant in the Money Damages Action. The next question is whether members of the PG Plaintiffs should be held jointly and severally liable for any damages the Court may find. In this Circuit:

> [C]ase law makes clear that joint and several sanctions against parties and their attorneys are available when the court finds both to be equally at fault, the court has wide discretion to consider the entire record before it when selecting the appropriate sanction." Lan v. Time Warner, Inc., No. 11 CV 2870, 2016 U.S. Dist. LEXIS 30488, 2016 WL 928731, at *2 (S.D.N.Y. Feb. 9, 2016) (quoting Hunt v. Enzo Biochem, Inc., No. 06 CV 170, 2011 U.S. Dist. LEXIS 117607, 2011 WL 4840713, at *7 (S.D.N.Y. Oct. 12, 2011)); see also Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir. 1990) ("In holding [plaintiff] and [plaintiff's counsel] *jointly and severally* liable for the monetary sanction, the district court (and the magistrate) determined that [plaintiff] and its counsel were each equally responsible for the failure to comply with discovery requests and court orders. The record fully supports that determination.") (emphasis in original).

*Laboy v. Quality Auto. Servs., Inc.,* 2024 U.S. Dist. LEXIS 21755, at *11.

The Court finds that joint and several liability is available in the present situation. However, it will defer the determination of the proper allocation to the inquest on damages.

---

[14] The Court is unsure why it took the Debtor over a year to answer the complaint but when he did, he raised his bankruptcy as an affirmative defense. The punctuality of the Debtor's affirmative defense may be pertinent to the Court's determination of damages, if any. However, it does not change the fact the PG Plaintiffs unreasonably violated the discharge by commencing and continuing the Money Damages Action.

## CONCLUSION

For all the reasons stated, the Court finds:

The Water Parks Group[15] did not violate the Debtor's discharge injunction when they commenced the Money Damages Action against Wizard Works. Likewise, the filing of the Lien Law Action did not violate 11 U.S.C. § 524. Thus, the Court grants summary judgment dismissing all causes of action against the Water Parks Group.

In contrast, the PG Plaintiffs[16] violated the Debtor's bankruptcy discharge under 11 U.S.C. § 524(a)(2). Furthermore, pursuant to *Taggart,* the PG Plaintiffs are in civil contempt for said violation. Therefore, the Court grants the Debtor's Motion for Partial Summary Judgment as to liability against the PG Plaintiffs.

A hearing is set for **1:30 p.m. on March 21, 2024,** to discuss the scheduling of a damages inquest with respect to the PG Plaintiffs.[17]

Dated: March 8, 2024              /s/ Robert E. Littlefield, Jr.
Albany NY                         Hon. Robert E. Littlfield, Jr.
                                  United States Bankruptcy Judge

---

[15] Excluding Atty Hogan and HoganWillig.

[16] Including Atty Hogan and HoganWillig.

[17] The purpose of the inquest is to establish what damages, if any, are owed by the PG Plaintiffs to the Debtor and what actions or lack thereof by the Debtor may justify a reduction in the sanctions. In addition, the Court will decide if the parties should be held jointly and severally liable or if the damages should be allocated in a certain manner.